UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
In re                                                      :
                                                           :
THE ALPHAS COMPANY OF NEW YORK                             :
INC.,                                                      :        15 Civ. 1106 (LGS)
                                        Debtor.            :
                                                           :
----------------------------------------------------------- X
PETER ALPHAS.,                                             :
                                        Appellant,         :
                                                           :
                          -against-                        :
                                                           :
JOHN S. PEREIRA, as Chapter 7 Trustee,                     :
                                        Appellee.          :
                                                           :
----------------------------------------------------------- X

## <u>ORDER</u>

LORNA G. SCHOFIELD, District Judge:

WHEREAS, Peter Alphas appealed two bankruptcy court orders pertaining to the

corporation for which he is the sole principal and shareholder, the Alphas Company of New

York, Inc. ("the Debtor"), and on January 27, 2016, the Court affirmed the bankruptcy court's

orders approving the settlement and shortening the notice period.  Dkt. No. 34.

WHEREAS, on January 28, 2016, this case was closed.  Dkt. No. 35.

WHEREAS, between January 26, 2021, and January 28, 2021, Mr. Alphas sent the emails

attached as Exhibits A through F to the Chambers email account.

WHEREAS, Mr. Alphas moves to reopen the bankruptcy settlement based on alleged

fraud (the "Motion").  *See* Exhibits A-F.

WHEREAS, this is not the proper venue in which to reopen the bankruptcy settlement.

The settlement may be reopened in bankruptcy court "to administer assets, to accord relief to the

debtor, or for other cause."  *In re Euro-American Lodging Corp.*, Fed. A'ppx 52, 53 (2d Cir.

2014) (citing 11 U.S.C. § 350(b)); *accord In re Avaya, Inc.*, No. 19 Civ. 5987, 2020 WL 5051580, at * 2 (S.D.N.Y. Apr. 30, 2020).  It is hereby

       **ORDERED** that the Motion is **DENIED**.  This case remains closed.  However, Mr. Alphas is reminded that all submissions to the Court must be publicly filed and that parties shall only email submissions to Chambers when directed to do so.

       The Clerk of Court is respectfully directed to mail a copy of this Order to Mr. Alphas, who is proceeding *pro se*.

Dated: July 28, 2021
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT A

| | |
|---|---|
| **From:** | Peter Alphas |
| **To:** | Schofield NYSD Chambers |
| **Subject:** | Fwd: Peter Alphas/ bankruptcy appeal 15 cv1106 |
| **Date:** | Monday, July 26, 2021 1:34:33 PM |
| **Attachments:** | false affidavits v alphas05052021.pdf |
| | exhibit 48 bankruptcy settlement agreement illegal eviction.pdf |
| | Exhibit 44 notice to cure letter.pdf |

**CAUTION - EXTERNAL:**

Your honor my name is Peter Alphas and I argued an appeal before you pro se trying to stop an agreement with my Trustee and Hunts point coop . As I pleaded the whole bankruptcy was due to fraud and other crimes yet my Trustee failed to care he took 1.3 million in charges and waived all claims against the hunts point coop . The settlement agreement I appealed was based solely on fraud and I have sued them personally three times and each court states I have no standing it just awful . Below is my communication and exhibits with the DA showing fraud but no guarantees he will act . As I told you I was a whistle blower on seven board members creating a monopoly of a 2.5 billion a year industry of which I know organized crime in command . I was thrown out literally when Business Integrity told them I went to them in confidence. The information you ruled on was fraudulent from the start and I desperately tried to explain . I have not been able to work in an industry that I love and started at age 13 my company was forced into bankruptcy from strong arm fraud . If I could re-open the settlement which was ruled by you I may have a leg to fight . I do have an attorney but thought I would give you a try first . I even put up an 800k bond if you remember. I ran into a trustee and Attorny who had no scruples and was shown this before . My name is Peter Alphas a father to four children who just needs justice to get back on my feet .See attachments below .
Thank you Peter Alphas
Cell 617-293-7680

Sent from my iPhone

Begin forwarded message:

> **From:** Peter Alphas <madalex.pa@gmail.com>
> **Date:** July 26, 2021 at 1:12:53 PM EDT
> **To:** Susan Arbeit <Susan.Arbeit@usdoj.gov>, "Joseph W. Allen"
> <Joseph.W.Allen@usdoj.gov>
> **Subject: Fwd: Peter Alphas/ bankruptcy**
>
>
> See below it's not new and certainly something the Trustee was aware of but important. Peter
>
>
> ---
>
> **From:** rspinak@gmail.com <rspinak@gmail.com>
> **Sent:** Thursday, May 13, 2021 4:56 PM
> **To:** 'Rahman, Tarek A (BronxDA)' <Rahmanta@Bronxda.nyc.gov>;
> 'Zelenka, William (BronxDA)' <ZELENKAW@bronxda.nyc.gov>

**Cc:** 'Peter Alphas' <madalex.pa@gmail.com>
**Subject:** FW: Peter Alphas

Hello again Tarek and William,

I have attached 2 further documents that I believe to be very relevant to the claims and documents I provided on May 6, 2013.  Attached please find: 1) A five day notice to cure letter signed by Rodelli claiming approximately $63,000 and once again fraudulently omitting the $39,000 owed to Peter, and 2)  A copy of the settlement agreement the bankruptcy trustee reached regarding alleged monies owed to Coop, damages for the illegal eviction, and the $39,000 withheld.

Thank you for your continued attention in this matter.

Best regards,
Rob Spinak

---

**From:** rspinak@gmail.com <rspinak@gmail.com>
**Sent:** Thursday, May 6, 2021 12:22 PM
**To:** 'Rahman, Tarek A (BronxDA)' <Rahmanta@Bronxda.nyc.gov>
**Cc:** 'Peter Alphas' <madalex.pa@gmail.com>; 'Zelenka, William (BronxDA)' <ZELENKAW@bronxda.nyc.gov>
**Subject:** RE: Peter Alphas

Hi Tarek and William,

Following up on our last conversation, attached are the stipulation of settlement in the eviction action and affidavits and letter.  Below is a brief outline of the relevant facts.

**Hunts Point (HP) v Alphas NY L&T 901713/12 (landlord/tenant court bronx civil)**

The initial fraud by omission was the stipulation of settlement in march 2013 for 64,000.  Had Alphas NY been informed of and given the 39,000 owed to them that everyone else got in 2011, the most you would have stipulated to was 25,000.

Then HP alleged Alphas NY breached the stipulation and wrongfully evicted Alphas NY despite a signed TRO restricting HP from such action. The court held the eviction was not legal and then ordered that Alphas NY be returned to the property.

HP then continued to argue in their motion August 3, 2013 and based their argument on an affidavit of rodelli full of demonstrable falsehoods. HP also sent Alphas NY a cure letter for 63,000 in October 2012.  Alphas could not cure for that amount but they could have for less, and the cure amount doesn't include the 39,000 HP owed Alphas NY.  Alphas could have come up with the 25,000 to cure. The court granted the warrant of eviction based upon Alphas NY breach of the stipulation of settlement (which was obtained through fraud).

HP continued to argue against Alphas NY's motions to stay the eviction as Alphas kept coming up with rent payments and HP once again submitted an affidavit of Rodelli, Jan 13, 2014, once again materially omitting Alphas' payment of 30,000 and omitting the 39,000 Alphas NY was owed.  These two amounts would have brought the balance to approximately zero, by their own admission in the affidavit of HP's attorney.

**HP v. Alphas NY -1st Dept Appellate Court**

HP then went to the Appellate Court, and using these false affidavits along with the judgments entered based on fraud, removed a stay on Alphas NY eviction.

In order to protect Alphas NY assets( the proprietary lease and membership certificates in the HP coop) from the pending eviction, Alphas NY was left with no choice but to petition for bankruptcy.

Then in **the SDNY Bankruptcy Court re Alphas NY,** HP once again argued their position relying on the judgments achieved through fraud along with the fraudulent affidavits.   It was during the bankruptcy hearing that Alphas learned of the withheld 39,000. Because HP had the leverage of the warrant of eviction (fraudulently obtained) prior to bankruptcy, the Bankruptcy Trustee knew he could potentially lose the claim and was forced to settle for a very small amount  (**including the 39,000 that was admittedly owed to Alphas NY since 2011)** and released Alphas NY's claims against HP.

Then HP used these same judgments and affidavits in **SDNY Alphas v. HP, teamsters, etal.**

Then most recently in 2019, HP used these judgements and affidavits in **Bronx Supreme Court.**

In addition, Michael Shapiro (general counsel AND HP coop member) in June 2013, claimed that Alphas NY owed 85,000 (once again omitting the 39,000) in the **SDNY court 6L packing et al v. Alphas NY et al. 1:11-cv-**

**2944 (RMB).**

Without the Bronx Civil court ruling obtained through the fraudulently induced stipulation of settlement and the fraudulent affidavits, none of the rulings and cases in numerous courts would have occurred.

Please feel free to contact me with any follow up questions or comments.

Best,

Robert Spinak

---

**From:** Rahman, Tarek A (BronxDA) <Rahmanta@Bronxda.nyc.gov>
**Sent:** Wednesday, March 24, 2021 3:41 PM
**To:** Rob Spinal <rspinak@gmail.com>
**Cc:** Peter Alphas <madalex.pa@gmail.com>; Zelenka, William (BronxDA) <ZELENKAW@bronxda.nyc.gov>
**Subject:** Re: Peter Alphas

Hi Robert and Peter,

Can we move our meeting to Friday?  I apologize for the inconvenience.

Tarek

---

**From:** Rob Spinal <rspinak@gmail.com>
**Sent:** Wednesday, March 17, 2021 9:21:59 AM
**To:** Rahman, Tarek A (BronxDA) <Rahmanta@Bronxda.nyc.gov>
**Subject:** Re: Peter Alphas

Yes same time?

Sent from my iPhone

> On Mar 17, 2021, at 8:33 AM, Rahman, Tarek A (BronxDA) <Rahmanta@bronxda.nyc.gov> wrote:
>
> Thank you for the information.
>
> I, unfortunately, need to reschedule our meeting that was planned for tomorrow.

Will it be possible for us to meet next week instead?

Tarek

---

**From:** rspinak@gmail.com <rspinak@gmail.com>
**Sent:** Tuesday, March 16, 2021 7:14:52 PM
**To:** Rahman, Tarek A (BronxDA)
<Rahmanta@Bronxda.nyc.gov>
**Subject:** RE: Peter Alphas

Hi Tarek,

I think what sums this whole thing up is collusion and racketeering. It's the market board with the union acting in concert to steal peter's business. When intimidation was failing, they changed tactics to an all- out assault financially, including consistent fraud on the courts.

I'm interested in knowing how they can deny fraudulent affidavits in housing court, appellate court and bankruptcy court when entire eviction was actuated by stipulation of settlement that was agreed to by Peter through fraud.  They claimed Peter owed 63,000 in rent when I felt I didn't owe that much, and they knowingly withheld the fact that they owed Peter 38,000 which they paid to everyone in 2011 but not Peter as of 2013.  Then throughout the litigation in housing court as Peter keeps paying more and more money throughout the stays of eviction, and the lifting of the stay in appellate ct and the bankruptcy court, which were all obtained through fraudulent claims of the amount owed.

The documents in the housing court(affidavit) demonstrate that but for the withheld 38,000 Peter was fully paid uptodate as of February 2014 and would never had to seek bankruptcy to protect his property.  They admitted they owed Peter the 38,000 by the settlement in bankruptcy and I shared evidence that the coop knowingly withheld Peters 38,000, and made false statement to every state and federal court in New York to force Peter out so that a coop board member could get it. Then they were able to use the fraudulently obtained eviction to leverage the bankruptcy trustee to claim that Peter owed 250, 000 in rent, and then waived all the corporations claims for the illegal eviction. The 38,000 fraud may not seem like a lot, but its fraud that led to theft of a 2.8 million dollar proprietary lease.

Best,
Rob

---

**From:** Rahman, Tarek A (BronxDA)
<<u>Rahmanta@Bronxda.nyc.gov</u>>
**Sent:** Tuesday, March 9, 2021 11:42 AM
**To:** Rob Spinal <<u>rspinak@gmail.com</u>>
**Subject:** Re: Peter Alphas

Rob,

Before our meeting next week, can you please send me an
email with the specific allegations that you would like to
address?

Thank you,


Tarek

---

**From:** Rob Spinal <<u>rspinak@gmail.com</u>>
**Sent:** Thursday, March 4, 2021 5:48:17 PM
**To:** Rahman, Tarek A (BronxDA)
<<u>Rahmanta@Bronxda.nyc.gov</u>>
**Subject:** Re: Peter Alphas

Ok 1 pm again.  Thank you

Sent from my iPhone

> On Mar 4, 2021, at 5:40 PM, Rahman, Tarek A
> (BronxDA) <<u>Rahmanta@bronxda.nyc.gov</u>>
> wrote:
>
>
> We can do it now, two weeks from today?
>
> ---
>
> **From:** Rob Spinal <<u>rspinak@gmail.com</u>>
> **Sent:** Thursday, March 4, 2021 5:31 PM
> **To:** Rahman, Tarek A (BronxDA)
> <<u>Rahmanta@Bronxda.nyc.gov</u>>
> **Subject:** Re: Peter Alphas

Yes shall we pick a day time closer or now?

Sent from my iPhone

On Mar 4, 2021, at 5:20 PM, Rahman, Tarek A (BronxDA) <Rahmanta@bronxda.nyc.gov> wrote:

I just remembered that ADA Zelenka is on vacation next week.  Can we do it the following week?

---

**From:** rspinak@gmail.com <rspinak@gmail.com>
**Sent:** Thursday, March 4, 2021 3:52 PM
**To:** Rahman, Tarek A (BronxDA) <Rahmanta@Bronxda.nyc.gov>
**Subject:** RE: Peter Alphas

HI Tarek,

Thanks for your time today and offering to finish the conversation.  When would be convenient for you?

Best,
Rob Spinak

---

**From:** Rahman, Tarek A (BronxDA) <Rahmanta@Bronxda.nyc.gov>
**Sent:** Friday, February 26, 2021 3:09 PM
**To:** Rob Spinal <rspinak@gmail.com>
**Subject:** Re: Peter Alphas

No. Phone or some sort of video conferencing

Tarek

---

**From:** Rob Spinal
<rspinak@gmail.com>
**Sent:** Friday, February 26, 2021
3:05:46 PM
**To:** Rahman, Tarek A (BronxDA)
<Rahmanta@Bronxda.nyc.gov>
**Subject:** Re: Peter Alphas


That works for everyone.  Is this in person?

Sent from my iPhone


> On Feb 26, 2021, at 1:04 PM, Rahman, Tarek A (BronxDA) <Rahmanta@bronxda.nyc.gov> wrote:


How does Thursday from 1-2 sound?

---

**From:**
rspinak@gmail.com
<rspinak@gmail.com>
**Sent:** Friday, February 26, 2021 11:16 AM
**To:** Rahman, Tarek A (BronxDA) <Rahmanta@Bronxda.nyc.gov>
**Subject:** RE: Peter Alphas


Hi Tarek,

So Peter asked me if we can schedule a meeting for the 3 of

us.  I'm pretty free and tues-thurs are good for peter. Could you let me know when would be a good time on your end.

Best,
Rob

---

**From:** Rahman, Tarek A (BronxDA) <Rahmanta@Bronxda.nyc.gov>
**Sent:** Friday, February 12, 2021 10:30 AM
**To:** Rob Spinal <rspinak@gmail.com>
**Subject:** Re: Peter Alphas

What is the best number to reach you.

---

**From:** Rob Spinal <rspinak@gmail.com>
**Sent:** Thursday, February 4, 2021 10:35 AM
**To:** Rahman, Tarek A (BronxDA) <Rahmanta@Bronxda.nyc.gov>
**Subject:** Re: Peter Alphas

Much appreciated.

Sent from my iPhone

On Feb

4,
2021,
at 8:13
AM,
Rahman,
Tarek A
(BronxDA)
<Rahmanta@bronxda.nyc.gov>
wrote:

Hi
Robert,

I will
get
back to
you
next
week
with an
update.

Thank
you,

Tarek

**From:**
rspinak@gmail.com
<rspinak@gmail.com>
**Sent:**
Tuesday,
January
26,
2021
3:11:26
PM
**To:**
Rahman,
Tarek A
(BronxDA)
<Rahmanta@Bronxda.nyc.gov>
**Subject:**
RE:
Peter

Alphas

Hi Tarek,

Happy new year. I trust all is well with you.

Could you please give me an update on the status of the Alphas matter and your inquiry.

I appreciate your continued attention to this matter/

Best,
Robert Spinak

---

**From:** Rahman, Tarek A (BronxDA) <Rahmanta@Bronxda.nyc.gov>

**Sent:** Thursday, November 12, 2020 10:14 AM

**To:** rspinak@gmail.com

**Subject:** Re: Peter Alphas

Mr. Spinak,

I want to confirm that there is no issue with us sharing text messages that Mr. Alphas shared with us in order to take the next steps in our inquiry.

Please

let me
know.

---

**From:**
rspinak@gmail.com
<rspinak@gmail.com>
**Sent:**
Tuesday,
November
10,
2020
11:30
AM
**To:**
Rahman,
Tarek A
(BronxDA)
<Rahmanta@Bronxda.nyc.gov>
**Subject:**
RE:
Peter
Alphas

Hi
Tarek,

I hope
you are
doing
well.  I
was
wondering
if there
is any
update
on
speaking
with
the
individual?
If not,
are you
waiting
until

covid is
no
longer
an
issue-
which
maybe
a year
away
still?

Thanks
for any
info
you can
provide.

Best,
Rob
Spinak

---

**From:**
Rahman,
Tarek A
(BronxDA)
<[Rahmanta@Bronxda.nyc.gov](mailto:Rahmanta@Bronxda.nyc.gov)>
**Sent:**
Thursday,
August
13,
2020
3:27
PM
**To:** Rob
Spinal
<[rspinak@gmail.com](mailto:rspinak@gmail.com)>
**Cc:**
Peter
Alphas
<[madalex.pa@gmail.com](mailto:madalex.pa@gmail.com)>
**Subject:**
Re:
Peter
Alphas

Not yet. COVID-19 continues to make a useful discussion with the individual difficult.

I will update you as soon as we have some progress.

Tarek

---

**From:** Rob Spinal <rspinak@gmail.com>
**Sent:** Thursday, August 13, 2020 2:34:29 PM
**To:** Rahman, Tarek A (BronxDA) <Rahmanta@Bronxda.nyc.gov>
**Cc:** Peter Alphas <madalex.pa@gmail.com>

**Subject:**
Re:
Peter
Alphas

Hi
Tarek,

I trust
all is
well
with
you
and
family.

Just
wondering
if there
was
any
progress
with
interviewing
the
individual
we
spoke
about
from
our
prior
discussion?

Best
regards,

Rob
Spinak

Sent
from
my
iPhone

On
May
29,
2020,
at
8:54
AM,
Rahman,
Tarek
A
(BronxDA)
<Rahmanta@bronxda.nyc.gov>
wrote:

Can
you
call
me,
I
don't
have
your
number
handy.

646-
322-
2291
Tarek
.
**From:**
Winston,
Mark
(BronxDA)
<Winstonma@Bronxda.nyc.gov>
**Sent:**
Thursday,
May
28,
2020
3:56
PM
**To:**
rspinak@gmail.com

**Cc:**
Rahman,
Tarek
A
(BronxDA)
**Subject:**
Re:
Peter
Alphas

Dear
Mr.
Spinak,

I
am
sorry,
but
as
I
mentioned
in
my
voice-
mail
the
other
day,
because
of
coronavirus/COVID-
19,
things
are
on
hold
in
my
Office
in
regard
to

this
matter,
and
I
simply
cannot
give
you
a
time-
frame
going
forward.
I
wish
for
you
and
your
family
to
stay
healthy
and
well.

Sincerely,

Mark
Winston

**From:**
rspinak@gmail.com
<rspinak@gmail.com>
**Sent:**
Thursday,
May
28,
2020
2:42
PM
**To:**
Winston,

Mark
(BronxDA)
<Winstonma@Bronxda.nyc.gov>
**Subject:**
Peter
Alphas

Hi
Winston,

Thanks
for
getting
back
to
me.
I
understand
with
the
plague
and
everything
came
to
a
standstill,
but
my
understanding
is
that
BIC
was
going
to
interview
two
people
prior
to
the
pandemic.
I
also

understand
the
market
is
working.
Do
you
have
any
idea
about
a
timeframe
where
we
can
expect
a
response?

Best,
Rob
Spinakl

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

CIVIL COURT OF THE CITY OF NEW YORK

County of BRONX

Date 3/7/13  Part 52

Index No. L&T: 90/713/2

Page 6 of 1

Hon.

HUNTS POINT TEAMING Produce
Cooperative Association, Petitioner,

against

The Alphas Company of New York Inc.
Respondent

STIPULATION OF SETTLEMENT

The parties understand that each party has the right to a trial, the right to have a Judge at any time ... Settlement ... either into a stipulation of settlement. However, after review of all the issues, the parties agree that they do not want to go to trial and instead agree to the following stipulation in settlement of the issues in this matter.

Party (please print) Disc. Agr. not John + Irwin Due.

Petitioner ✓ HUNTS Point Team etal

Respondent 1 The Alphas Company of NY Inc.

Respondent 2

Respondent 3

Added/Amended or Deleted    Appearance    No Appearance    No Answer

November
December 2/13

Petitioner + Respondent via counsel resolve this matter as follows:

(1) That judgment is consented to in the amount of $63,937 as monthly rent + additional rent due through 3/3/13.

(2) Resp. to pay judgment arrears via rent of $7,000 per ...

(3) In addition Resp. to pay current rent starting ... Apl. 2013 by the 10th of each month.

(4) The judgment payment to be by the 15 day of each month.

(5) Upon failure to pay current rent & additional rent due as ... set forth + due in this judgment warrant shall ...

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX NON-HOUSING PART 52

HUNTS     POINT     TERMINAL     PRODUCE          Index No. L&T 901713/12
COOPERATIVE ASSOCIATION, INC.

         Petitioner-Landlord,          **AFFIDAVIT IN OPPOSITION TO
                                             RESPONDENT'S CROSS-
    -against-                                          MOTION**

THE ALPHAS COMPANY OF NEW YORK, INC.

        Respondents-Tenants

STATE OF NEW YORK       )
                ss.:
COUNTY OF NEW YORK    )

    **NICHOLAS RODELLI**, being duly sworn deposes and says:

    1.    I am the General Manager of petitioner Hunts Point Terminal Produce Cooperative Association, Inc. ("Petitioner").

    2.    Petitioner is the landlord of the building located at and known as New York City Terminal Market, Hunts Point Food Distribution Center, located in Hunts Point, Bronx, New York (the "Building" or "Market").

    3.    The Alphas Company of New York, Inc. ("Tenant") is a commercial tenant that occupies the premises consisting of stores, known as Units 223, 224 and 225, and offices, known as Office Units 223A, 224A and 225A (collectively referred to herein as the "Premises").

    4.    I was informed by a marshal of the City of New York that Tenant was evicted from the Premises on May 2, 2013.

The Removal of Items from the Premises

5.    After Petitioner obtained legal possession of the Premises on May 2, 2013, the Premises were inspected on May 3rd because foul smelling odors were emanating from the Premises.

6.    Upon inspection of the Premises, I discovered spoiled and contaminated produce in violation of Article VII (e) of the Rules and Regulations of the New York City Terminal Merchant Associations (the "Rules"), which states in pertinent part that, "All buildings, stores, spaces and sidewalks adjacent thereto shall be kept in a clean and sanitary condition". A copy of the Rules and Regulations of the Petitioner is annexed hereto as Exhibit A.

7.    Given the foregoing, Petitioner removed all of the spoiled produce from the Premises on May 3rd and/or May 4th in accordance with the laws and regulations of the City of New York.

8.    At that time, Petitioner also removed three (3) trailers that were located near the Premises because the trailers did not have the requisite ownership registration decal affixed to them as required by Article V of the Rules.

9.    When Peter Alphas, the principal of Respondent, contacted me to request that the trailers are returned to him, I informed him that that the trailers would be released to him once proof of ownership was provided.

10.   Petitioner did not remove any computers or other equipment from within or around the Premises on May 3rd or May 4th or on any other date.

11.   I was not aware the court ordered that no items were removed from the Premises. I removed the spoiled produced because that was what was required of me by law.

Notwithstanding The Eviction Tenant Could Not Lawfully Operate Its Business

12.     I have been informed by counsel, that Sections 11-09 (d) and (e) of the New York City Rules & Regulations, Title 17, Chapter 2, Subchapter A requires Tenant to hold worker's compensation insurance and liability insurance in order to operate its business.

13.     According to the most recent insurance documentation provided by Tenant to me, Tenant has not held worker's compensation and liability insurance since February 27, 2013. A copy of Tenant's insurance policy with Travelers dated February 22, 2012 is annexed hereto as Exhibit B.

14.     Additionally Tenant's PACA license has been suspended by the USDA. Record of Tenant's suspension is annexed hereto as Exhibit C.

15.     Petitioner notified Tenant that without a PACA license Tenant is prohibited from operating its business pursuant to governmental regulations and federal law, a copy of the notice is annexed hereto as Exhibit D.

16.     Finally, the Premises has not had electricity since the middle of May when Con-Edison ceased providing electricity and subsequently seized its meter due to Petitioner's failure to pay its bill. In addition to being a public safety hazard to operate a business without electricity especially when the business concerns the storage of perishable food during the summer months, Tenant is prohibited to operate without electricity pursuant to paragraph 9.01 of its proprietary lease. Annexed as Exhibit E is a copy of the June 10, 2013 notice sent by Petitioner to Tenant notifying Tenant that it cannot operate its business in the Premises without electricity and public liability insurance.

17.  Given the foregoing, Tenant's cross motion should be dismissed in its entirety.

_____
Nicholas Rodelli

Sworn to before me this
2nd day of August 2013

_____
Notary Public

GEORGE L. SANTANA
Notary Public, State of New York
No. 01SA6164896
Qualified in Westchester County
Commission Expires 4/30/2015

-4-

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX NON-HOUSING PART 52

---

HUNTS POINT TERMINAL PRODUCE COOPERATIVE
ASSOCIATION, INC.

                Petitioner-Landlord,

-against-

THE ALPHAS COMPANY OF NEW YORK, INC.

              Respondents-Tenants

Index No. L&T 901713/12

**AFFIDAVIT IN OPPOSITION TO
RESPONDENT'S ORDER TO
SHOW CAUSE**

---

STATE OF NEW YORK    )
                    ss.:
COUNTY OF NEW YORK    )

      NICHOLAS RODELLI, being duly sworn deposes and says:

      1.      I am the General Manager of petitioner Hunts Point Terminal Produce Cooperative Association, Inc. ("Petitioner").

      2.      Petitioner is the owner of the building located at the building known as New York City Terminal Market, Hunts Point Food Distribution Center, located in Hunts Point, Bronx, New York (the "Building" or "Market").

      3.      The Alphas Company of New York, Inc. ("Tenant") is a commercial tenant that occupies the premises consisting of stores, known as Units 223, 224 and 225, and offices, known as Office Units 223A, 224A and 225A (collectively referred to herein as the "Premises") of the Building pursuant to a Proprietary Lease dated July 2, 2003 between Petitioner, as landlord, and Tenant, as tenant. Tenant is a fruit and vegetable wholesaler.

      4.      As more fully explained herein, even if Tenant's most recent court ordered payment of $20,000.00 is credited to its account, Tenant still owes a total of $70,244.75 (which includes $55,844.75 due pursuant to the stipulation of settlement and base rent for December 2013 and January 2014 in the amount of $7,200.00 per month).

5.    In fact other than the $20,000.00 payment ordered by the court for the instant order to show cause, Tenant has not paid rent since remitting the prior court ordered payments of $14,200.00 and $20,400.00 in or about August 2013.

6.    As explained above, even with the $20,000.00 payment, Tenant would not be current with the payments required pursuant to the stipulation of settlement and/or its current rental obligation for the months of December 2013 and January 2014.

7.    Given the foregoing, Tenant's motion should be dismissed in its entirety and the Landlord should be permitted to proceed with Tenant's eviction without further delay.

_____
Nicholas Rodelli

Sworn to before me this
_13_ day of January 2014

_____
Notary Public

PAT SINGH
Notary Public, State of New York
No. 01816062843
Qualified in Bronx County
Commission Expires Dec. 26, 20_14_

CBROWNE/8042.0016/1301026

# MICHAEL SHAPIRO, PLLC

270 MADISON AVENUE
SUITE 1501
NEW YORK, NEW YORK 10016

(212) 417-9191
(212) 417-9190 (FAX)
MSHAPIROESQ@YAHOO.COM

June 18, 2013

VIA FIRST CLASS MAIL
Hon Richard M. Berman, U.S.D.J.
U.S. District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/20/13



RECEIVED
JUN 20 2013
CHAMBERS OF
RICHARD M. BERMAN
U.S.D.J.

Re:   Six L's Packing, Inc., et al. v. The Alphas Companies, et al
      Case No. 1:11-cv-2944(RMB)
      Pre-motion Request

Dear Judge Berman:

   I am General Counsel to Hunts Point Terminal Produce Cooperative Association, Inc.
("Market"), which is owed over $85,000.00 in unpaid maintenance and additional rent charges from
the defendant The Alphas Company of New York ("Alphas").

   I am in receipt of Mark Mandell's letter to Your Honor requesting your permission to submit
a new motion authorizing an auction and sale of the Alphas' units at the Market.

   The Market wholeheartedly supports the sale of the Alphas' units and respectfully requests
Your Honor entertain Mr. Mandell's motion. I have submitted as part of this motion a formal
declaration supporting it.

   Thank you.

Very truly yours,

Michael Shapiro

Clerk to docket.

SO ORDERED.

338771.1

6-20-13
DATE

VICTOR MARRERO, U.S.D.J.

SO ORDERED:
Date: 6/20/13   Richard M. Berman
                Richard M. Berman, U.S.D.J.

|  |  |
|---|---|
| Hearing Date: | June 4, 2014 at 10:00 a.m. |
| Objection Deadline: | May 28, 2014 at 4:00 p.m. |

PRYOR CASHMAN LLP
David C. Rose
Seth H. Lieberman
7 Times Square
New York, New York 10036-6569
Telephone: (212) 421-4100
Facsimile: (212) 326-0806
drose@pryorcashman.com
slieberman@pryorcashman.com

*Attorneys for Hunts Point Terminal Produce*
*Cooperative Association, Inc.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

In re:

THE ALPHAS CO. OF NEW YORK INC.,

                              Debtor.

-------------------------------------------------------------------X

Chapter 11

Case No. 14-10510 (ALG)

### NOTICE OF VERIFIED MOTION OF HUNTS POINT TERMINAL
### PRODUCE COOPERATIVE ASSOCIATION, INC. SEEKING:
### (I) A DECLARATION THAT THE AUTOMATIC STAY IS INAPPLICABLE
### PURSUANT TO 11 U.S.C. §§ 362(b)(10) AND 541(b)(2), OR. ALTERNATIVELY;
### (II) RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1),
### OR. ALTERNATIVELY; (III) DISMISSAL OF THE BANKRUPTCY CASE

**PLEASE TAKE NOTICE** that upon the verified motion (the "Motion") of Hunts Point

Terminal Produce Cooperative Association, Inc. (the "Landlord"), Landlord will move before the

Honorable Allan L. Gropper, U.S.B.J., in the United States Bankruptcy Court, Courtroom 617,

One Bowling Green, New York, New York 10004-1408 on June 4, 2014 at 10:00 a.m. (Eastern

Time) or as soon thereafter as counsel may be heard, for entry of an Order: (i) declaring that the

automatic stay is inapplicable pursuant to 11 U.S.C. §§ 362(b)(10) and 541(b)(2), or,

alternatively; (ii) granting the Landlord relief from the automatic stay pursuant to 11 U.S.C.

## VERIFICATION

NICHOLAS RODELLI, of full age, hereby certifies as follows:

1.       I am the Market Manager of Hunts Point Terminal Produce Cooperative Association, Inc. (the "Landlord"). I am authorized to make this verification on behalf of the Landlord.

2.       I have read the foregoing Motion and know the contents thereof. All of the facts set forth in Paragraphs 8-37 of the Motion are true to my own knowledge, except those alleged on information and belief, in which case I believe them to be true. The grounds for my belief as to all matters not stated upon my own knowledge are the books and records of Landlord.

I hereby certify under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Executed at Bronx, New York, on May 7th, 2014

_____
NICHOLAS RODELLI

25

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

In re                                          :   Chapter 7
                                               :
THE ALPHAS COMPANY OF NEW YORK,                :   Case No. 14-10510 (ALG)
INC.,                                          :
                                               :
                 Debtor.                       :
                                               :
------------------------------------X

## **SETTLEMENT AGREEMENT**

This Settlement Agreement (the "Settlement Agreement") is made and entered into as of

this 20th day of November, 2014, by and between John S. Pereira, as Chapter 7 Trustee (the

"Trustee") for the estate of The Alphas Company of New York, Inc. (the "Debtor") and:

(a) certain named defendants in the action pending in the United States District Court for the

Southern District of New York, captioned as The Alphas Company of New York Inc. et ano. v.

The Hunts Point Terminal Produce Cooperative Association, Inc. et al., Case No. 1:14-cv-00145-

ALC (the "District Court Action"): (i) Hunts Point Terminal Produce Cooperative Association,

Inc. ("Hunts Point"), Charles Slepian, Matthew D'Arrigo, Stephen Katzman, Joseph Palumbo,

Denise Goodman, Jeffrey Haas, Cary Rubin, Joel Fierman, Ira Nathel, Thomas Tramutola,

Richard Cochran, Jimmy Margotta, Chris Armata, Cathy Hunt, Lori DeMarco, Eddy Creces,

Myra Gordon, Nick Rodelli, Ronnie Okun, d/b/a Morris Okun, Inc. and Michael Shapiro, Esq.

(together with Hunts Point, collectively, the "Hunts Point Defendants"), and (ii) Union Local

202, of the International Brotherhood of Teamsters, Leo Servidio, Daniel Kane, Oscar Gonzales,

Charles Marchiado, Richard Blylott, and Thomas J. Bia (the "Other Defendants," together with

the Hunts Point Defendants, collectively, the "Defendants"); and (b) Hunts Point in the action

pending in the Supreme Court of the State of New York, County of Bronx, captioned as The

Alphas Company of New York, Inc. v. Hunts Point Terminal Produce Cooperative Association,

Inc., Index No. 305155/2013 (the "State Court Action," together with the District Court Action, the "Actions"), the approval of which will be sought in the Bankruptcy Court.  The Trustee and the Defendants are each referred to herein as a "Party" and, collectively, as the "Parties."

This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Debtor's claims in the State Court Action against Hunts Point and in the District Court Action against the Defendants upon the terms and conditions hereof and subject to the approval of the Bankruptcy Court.

**WHEREAS**, on October 18, 2013, the Debtor filed the State Court Action against Hunts Point seeking (i) a declaratory judgment that Hunts Point wrongfully evicted the Debtor, and (ii) damages against Hunts Point; and

**WHEREAS**, the Debtor filed a claim with Tower Insurance Company of New York ("Tower") for damages allegedly sustained as a result of the wrongful eviction alleged in the State Court Action and was paid $102,545.85 by Tower in  respect of that claim (the "Tower Payment"); and

**WHEREAS**, Tower has commenced an action against Hunts Point in the Supreme Court of the State of New York, County of New York to recover from Hunts Point the $102,545.85 Tower paid to the Debtor, plus interest (from May 2, 2013), costs and disbursements, captioned Tower Insurance Company of New York a/s/o The Alphas Company of New York Hunts Point Terminal Produce Cooperative Association, Inc., Index No. 161629/2013 (the "Tower Action"); and

**WHEREAS**, Hunts Point purports to have an unliquidated claim against the Debtor's estate for the amount, if any, that Hunts Point is required to pay to Tower on account of the Tower Payment (the "Hunts Point Tower Claim"); and

2

**WHEREAS**, on January 9, 2014, the Debtor, along with Peter Alphas, filed the District Court Action against the Defendants, purporting to allege certain violations of the RICO Statute and certain common law causes of action; and

**WHEREAS**, the State Court Action and the District Court Action seek monetary damages; and

**WHEREAS**, on March 4, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and thereby commenced a chapter 11 case in this Bankruptcy Court (the "Court"); and

**WHEREAS**, on May 5, 2014, Hunts Point filed a motion with the Court for an order (i) declaring the automatic stay inapplicable pursuant to sections 362(b)(10) and 541(b)(2) of the Bankruptcy Code, or alternatively, (ii) granting Hunts Point relief from the automatic stay pursuant to section 362(b)(1) of the Bankruptcy Code to permit eviction of the Debtor from the premises consisting of commercial units, identified as Units 223, 224 and 225, and consisting of offices, identified as Office Units 223A, 224A and 225A, located in the Hunts Point Market (collectively, the "Premises") and to permit Hunts Point to cancel the Debtor's Membership Interests in the Cooperative (the "Lift Stay Motion"); and

**WHEREAS**, by Order dated June 5, 2014 [Doc. No. 29], the Court converted the Debtor's chapter 11 case to a case under chapter 7 pursuant to section 1112(a) of the Bankruptcy Code; and

**WHEREAS**, on June 5, 2014, the Trustee was appointed as the trustee in the Debtor's chapter 7 case [Doc. No. 30]; and

3

**WHEREAS**, on June 6, 2014, the Court entered an Order [Doc. No. 31] granting the Lift Stay Motion (the "Lift Stay Order"); and

**WHEREAS**, the Trustee and Hunts Point have entered into a Stipulation and Order (the "Stipulation and Order") vacating the Lift Stay Order, without prejudice, so that the Trustee can propose and consummate an assumption, assignment and sale of, among other things, the proprietary lease dated as of July 2, 2003 (the "Lease") between the Debtor and Hunts Point for the Debtor's use and occupancy of the Premises (together with the Debtor's membership interests (the "Membership Interests") in the cooperative, which Membership Interests are appurtenant to the Lease), free and clear of any and all liens, claims and encumbrances under section 363(f) of the Bankruptcy Code to a stalking horse bidder through an approved auction process, subject to higher and better offers (the "Sale"); and

**WHEREAS,** Hunts Point alleges to possess a claim against the Debtor's estate for rent or other arrears asserted with respect to the Lease in the total aggregate amount of $251,565 (the "Hunts Point Cure Claim"), which claim shall be fixed in that amount and shall not continue to accrue; and

**WHEREAS**, the Trustee, on the one hand, and the Defendants, on the other hand, wish to compromise and settle all their claims and disputes in the Actions upon the terms and conditions set forth herein, subject to any exceptions set forth herein, so as to resolve any and all such disputes and claims by and among said parties while avoiding any additional costs and uncertainty of litigation; and

**WHEREAS**, the Trustee has considered the benefit to the Debtor's estate that will be derived from the compromise and settlement of the Actions upon the terms and conditions set

4

forth herein, and has concluded that said compromise and settlement is in the best interests of the Debtor's estate; and

**NOW, THEREFORE**, in consideration of the foregoing, it is hereby stipulated and agreed by and between the Parties, by and through their respective undersigned counsel, as follows:

1.     In full satisfaction of all rights, claims and causes of action of the Trustee on behalf of the Debtor's estate against Hunts Point in the State Court Action and the Defendants in the District Court Action, Hunts Point agrees to pay to the Trustee, as set forth herein, a total of Two Hundred Eleven Thousand Five Hundred Sixty Five Dollars ($211,565) (the "Settlement Amount").

2.     Upon consummation and closing of the Sale, Hunts Point shall also remit to the Trustee a payment in the amount of $38,627.13 that is currently due and owing to the Debtor, together with documentation confirming that such amount is the correct amount of the Debtor's share of a judgment obtained by Hunts Point on behalf of its members against the Harlem River Shipyard Association.

3.     Upon consummation and closing of the Sale, the Hunts Point Cure Claim will be reduced by the Settlement Amount and, upon consummation and closing of the Sale, will be cured by the Trustee's payment to Hunts Point in the aggregate amount of $40,000 (the "Hunts Point Cure Amount").  In the event, however, that the Hunts Point Tower Claim is liquidated, by adjudication, settlement or otherwise, the Settlement Amount shall be reduced by fifty percent (50%) of the total aggregate amount paid by Hunts Point to Tower in connection with the Tower Action, net of any and all contributions from any and all third parties (the "Hunts Point Tower Credit"), and Hunts Point shall be entitled to a further cure payment on account of the Hunts

5

Point Cure Claim in the amount of the Hunts Point Tower Credit, *provided that*, under no circumstance shall the Hunts Point Tower Credit be an amount greater than $50,000.00.

4.      Upon the Trustee's receipt of a fully executed copy of this Settlement Agreement, the Trustee will promptly seek approval of this settlement by filing a motion with the Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "9019 Motion") and the Parties agree to take all reasonable actions necessary to secure such order.  The Parties agree that this Settlement Agreement will not become effective until an order approving it is entered by the Court, and that order is no longer subject to appeal.

5.      If through no fault of the Parties, either (i) within ninety (90) days after the 9019 Motion is filed, or such other time period as agreed by the Parties, the Bankruptcy Court does not enter an order approving this Settlement Agreement, or (ii) the Court determines, or the Parties agree, the Sale cannot be consummated and closed, then this Settlement Agreement shall be deemed null and void, and the Parties shall revert to their respective positions as if this Settlement Agreement had not existed or been executed without any prejudice whatsoever from having entered into this Settlement Agreement, and nothing contained in this Settlement Agreement, the 9019 Motion or the arguments of counsel and the statements of the Parties in support of this Court's approval of this Settlement Agreement shall be deemed admissible for any purpose or used by either Party to the prejudice of the other Party in any subsequent litigation of the controversies being settled herein, except that any Party may use the existence of this Settlement Agreement to the extent necessary to confirm the effect of this paragraph 5.

6.      Upon the approval of this Settlement Agreement by the Court and the payment and/or escrow of the Hunts Point Cure Amount, the Defendants hereby release, acquit, and forever discharge the Trustee, the Debtor and the Debtor's estate from any and all claims, causes